UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA PITZEN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC ANIMAL HEALTH, INC. d/b/a SQUIRE LABORATORIES, INC. and NEOGEN CORPORATION,<br><br>Defendants. | Case No.: 25-cv-0196-AJB-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NEOGEN'S MOTION TO DISMISS**<br><br>**(Doc. No. 35)** |

Before the Court is Defendant Neogen Corporation's ("Neogen") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). (Doc. No. 35.) Plaintiffs responded in opposition to the motion (Doc. No. 44) and Neogen replied. (Doc. No. 46). For the reasons stated below, Neogen's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs Joanna Pitzen, Joanne Mercer, Caroline Oddie, and Jenny Barrett ("Plaintiffs") initiated the instant action on January 28, 2025, alleging causes of action for negligence and strict products liability. (Doc. No. 1.) On March 24, 2025, Neogen filed a

motion to dismiss the complaint. (Doc. No. 15.) Subsequently, the Parties filed a joint motion seeking leave for Plaintiffs to file an amended complaint. (Doc. No. 23.) The Court granted the joint motion, and Plaintiffs filed the operative FAC. (Doc. No. 25.) Neogen and Defendant Atlantic Animal Health, Inc., d/b/a Squire Laboratories, Inc. ("Squire") both moved to dismiss the FAC. (Doc. Nos. 35; 37.) Plaintiffs dismissed Squire pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and the Court denied Squire's Motion to Dismiss as moot. (Doc. Nos. 56; 57.) Neogen's Motion to Dismiss remains pending before the Court and is addressed in the instant order.

### B. Factual Background

Neogen specializes in manufacturing, marketing, testing, and selling food-and-animal-safety products, including veterinary pharmaceuticals. (Doc. No. 25 ¶ 7.) Squire manufactures and sells Fura-Zone, a topical antibacterial ointment containing the active ingredient nitrofurazone ("NFZ"). (Doc No. 25 ¶¶ 1, 6.) NFZ treats and prevents surface bacterial infections in wounds, burns, and cutaneous ulcers in horses. (Doc. No. 25 ¶ 13.) In 2000, Neogen purchased Squire and has since housed Fura-Zone in its Animal Safety segment, which is engaged in the development, manufacture, marketing, and distribution of veterinary products, including Fura-Zone. (Doc. No. 25 ¶ 7.)

Plaintiffs allege that the Fura-Zone brand is one of over a dozen available antimicrobial agents containing NFZ as an active ingredient and intended for equine use. (*Id.* ¶ 11 & n.4.) According to Plaintiffs, these topical agents are commonly used by horse owners, groomers, and trainers to prevent bacterial skin infections when a horse has a wound on the skin. (*Id.* ¶¶ 13–14.) Plaintiffs each have a long history of working with horses and claim they applied Fura-Zone to horses within their care at various points in time over the last 50 years. (Doc. No. 25 ¶ 18.) Plaintiffs allege that through their extensive work with horses as groomers and stable hands they were exposed to Fura-Zone and NFZ, and due to that exposure, they have suffered severe reproductive harm including uterine fibroids, heavy menstrual periods, pain with menstruation, abnormal Pap smears, ovarian cysts, an ectopic pregnancy, and a miscarriage. (Doc. No. 25 ¶¶ 2–5, 18(a)–(d), 19–30.)

Plaintiffs further contend that Neogen and Squire manufacture, distribute, and sell Fura-Zone to consumers despite knowing that NFZ is dangerous to humans and without disclosing the severity and scope of risks associated with its intended uses. (*Id*. at ¶1.)

According to the FAC, studies dating back to the 1960s show that NFZ produces mammary tumors in rats and ovarian tumors in mice. (Doc. No. 25 ¶ 19.) Plaintiffs allege that the National Toxicology Program—an interagency program within the U.S. Department of Health and Human Services—has long known that NFZ causes sebaceous gland adenomas in male rats, mammary fibroadenomas in female rats, ovarian and testicular tumors in mice, and infertility in female mice. (*Id*. at ¶¶ 20, 23.) Studies from the National Toxicology Program found "clear evidence" of carcinogenic activity of NFZ for female rats and mice, and "equivocal evidence" of carcinogenic activity of NFZ for male rats. (*Id*. at ¶ 21.)

Plaintiffs contend that scientific knowledge of NFZ's toxicity has led to increasing regulations of its use. (*Id*. at ¶¶ 27–30.) In 1991, the Federal Drug Administration ("FDA") banned NFZ for use in poultry and swine consumed by humans because of cancer risks. (*Id*. at ¶ 28.) In 2002, the FDA banned the topical use of nitrofurans on food-producing animals because studies proved that cattle treated with NFZ had carcinogenic residue in their milk and tissues.[1] (*Id*. at ¶ 29.) Additionally, California's Proposition 65 includes NFZ in its list of carcinogens and/or reproductive toxicants as a reproductive toxicant. (*Id*. at ¶ 30).

Plaintiffs each routinely used Fura-Zone, applying it to horses within their care throughout their extensive work in the equestrian industry. (*Id*. ¶ 18.) Plaintiff Pitzen was first exposed to Fura-Zone when she was a teenager working full time as a groomer at Riverview Farms in Rancho Santa Fe, California. (Doc. No. 25 ¶ 18(a).) There, Pitzen would mix Fura-Zone with dimethyl sulfoxide ("DSMO"), a colorless liquid originally

---

[1] NFZ is a part of the chemical class referred to as nitrofurans. *See* Nitrofurans; Withdrawal of approval of New Animal Drug Applications. 56 Fed. Reg. 41,902, 41,903 (1991).

used as an industrial solvent, to create a "sweat," which she lathered around horses' joints.[2] (*Id.*) Pitzen also worked as a groomer at various California ranches including Rancho Del Mar, Sandy Arlidge, Rockridge, and Mira Mar Ranch, routinely applying Fura-Zone to horses. (*Id.*) In 2004, Pitzen became the manager of a stable in Poway with around 120 horses. (*Id.*) Plaintiffs allege that during this time, Pitzen experienced significant exposure to Fura-Zone. (*Id.*) Plaintiffs allege that as a direct and proximate result of Pitzen's exposure to NFZ, she suffered and continues to suffer reproductive harm including being diagnosed with pre-cervical cancer in her early 20s, requiring the tip of her cervix to be surgically cut off. (*Id.* ¶ 2.) Pitzen also suffered from uterine fibroid tumors, extreme menstrual pain, and a difficult miscarriage. (*Id.*) While Pitzen had one daughter, she was unable to become pregnant again. (*Id.*)

Plaintiff Mercer was first exposed to Fura-Zone when she was 11 years old at Rancho Bernardo Stables in San Diego, California. (Doc. No. 25 ¶ 18(b).) She spent most weekends and summers at the Stables from ages 14 through 18, where she applied Fura-Zone to horses within her care. (*Id.*) Mercer managed her own horse business in California for around 20 years consisting of about 50 horses to which she liberally applied Fura-Zone that was pre-mixed with DSMO to create a sweat. (*Id.*) Plaintiffs allege that as a direct and proximate result of Mercer's exposure to NFZ, she suffered and continues to suffer reproductive harm including extremely painful menstrual cycles as a teenager, endometriosis, frequent fibroid tumors, golf ball to pea-sized breast tumors, and a ruptured ovary. (*Id.* ¶ 3.) These issues forced Mercer to have her tubes tied, undergo a full hysterectomy, and have breast tumors surgically removed. (*Id.*)

Plaintiff Oddie was exposed to Fura-Zone every weekend for about three years while

---

[2] Plaintiffs describe a "sweat" as a method which involves the lathering of Fura-Zone around a horses affected joint, covering it in plastic wrap, and applying a bandage (a "sweat" or "sweating a leg") in order to reduce swelling of a horse's leg or to improve the cosmetic appearance of a horse. (Doc. No. 26 ¶ 16.) When applying a sweat, equestrians commonly mix Fura-Zone with dimethyl sulfoxide ("DSMO"). (*Id.* ¶ 17.) Plaintiffs allege that using DMSO in a sweat reduces edema in limbs and combats "stocking up," which is when blood and lymph fluid pools the legs of a horse. (*Id.*)

volunteering with horses at Poway Stables in California from 1975 to 1978, where she mixed Fura-Zone with DSMO to create a sweat which she lathered around horses' joints. (*Id.* ¶ 18(c).) Plaintiffs allege that as a direct and proximate result of Oddie's exposure to NFZ, she suffered and continues to suffer reproductive harm including thyroid tumors on her ovaries, an abnormal Pap Smear, and profuse and unending bleeding. (*Id.* ¶ 4.) Due to these complications, Oddie underwent a full hysterectomy around 2002. (*Id.*)

Plaintiff Barrett was exposed to Fura-Zone since she was a small child. (Doc. No. 25 ¶ 18(d).) Barrett grew up around Poway Stables in California where her parents raised quarter horses and her dad worked as a farrier. (*Id.*) Barrett started applying Fura-Zone to horses when she was training ponies at age 5. (*Id.*) Thereafter, through her work with horses, she continued to routinely use Fura-Zone to treat her horses' nicks, cuts, and scrapes, applying the ointment with her fingers and hands until around 2000. (*Id.*) Plaintiffs allege that as a direct and proximate result of Barrett's exposure to NFZ, she suffered and continues to suffer severe reproductive harm including frequent and dense ovarian cysts, uterine fibroid tumors, and heavy bleeding. (*Id.* ¶ 5.) Additionally, after a miscarriage and an ectopic pregnancy, Barrett required a partial hysterectomy, leaving one of her ovaries. (*Id.*) Due to ongoing cysts and other complications, Barrett was forced to have a full hysterectomy at 30 years old. (*Id.*).

By way to the instant motion to dismiss, Neogen moves to dismiss the FAC in its entirety arguing that Plaintiffs claims are time-barred under of California Code of Civil Procedure § 335.1, which requires a plaintiff to bring any personal injury claims within two years of the date of the alleged injury. (Doc. No. 35-1 at 6.) *See* Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another.").

Plaintiffs counter that the statute of limitations has not passed because Plaintiffs did not discover that they were harmed by NFZ or Fura-Zone until June of 2024, when Plaintiff Barrett posted on Facebook asking if any other women who worked at stables with horses developed ovarian cysts or fibroids after using NFZ ointment. (Doc. No. 44 at 9

(citing Doc. No 25 ¶ 32).) Additionally, Plaintiffs contend that the applicable statute of limitations is found in California Code of Civil Procedure § 340.8(a) rather than § 335.1. (Doc. No. 44 at 10.) Section 340.8(a) incorporates California's delayed discovery rule for injuries based on toxic exposure. (Doc. No. 44 at 10.) In relevant part, the statute provides that a plaintiff must file suit "no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, "(1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later." Cal. Code. Civ. P. § 340.8(a); *Ligaya Ronduen v. The Geo Grp., Inc.*, No. EDCV 23-481 JGB (SHKX), 2023 WL 5506001, *6 (C.D. Cal. July 6, 2023) (applying § 340.8 to claims for injuries from exposure to toxic chemical HDQ Neutral and stating that the statute "incorporates the delayed discovery rule through its plain language"). Plaintiffs allege that their claims are timely under this statute, which anticipates that persons exposed to toxic chemicals may not immediately understand the cause of their injuries nor any wrongful act in connection therewith. (Doc. No. 22 at 10.)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); s*ee Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

      In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

      **B.**    **Federal Rule of Civil Procedure 9(b)**

      A cause of action alleging fraud must also comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.* The complaint must include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds.*

      Rule 9(b)'s heightened pleading standard serves two main purposes. First, allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667 (9th Cir. 2018). Second, the rule serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.* (alteration in original).

### C. Leave to Amend

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Plaintiffs allege that they did not discover, nor reasonably should have discovered, that their reproductive injuries were caused by Fura-Zone and/or NFZ until June 2024 when a group of women who all had reproductive issues and used Fura-Zone through their work with horses connected through a Facebook post. (Doc. No. 44 at 11–12 (citing Doc. 25 at ¶ 32).) Neogen contends this allegation is insufficient to entitle Plaintiffs' to tolling under the delayed discovery rule or the fraudulent concealment doctrine. (Doc. No. 35-1 at 8.) Neogen argues that the FAC is void of necessary facts such as (1) what prompted Plaintiff Barrett to post her question on social media; (2) how and when Plaintiffs came to associate other alleged symptoms—such as menstrual pain, miscarriage, endometriosis, a ruptured ovary, thyroid tumors, abnormal Pap Smear, heavy bleeding, and ectopic pregnancy with Fura-Zone exposure; (3) and what prevented Plaintiffs from learning these facts sooner. (Doc. No. 35-1 at 9.)

### A. Statute of Limitations

In a federal diversity action brought under state law, the state statute of limitations—in this case California—governs. *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.,* 813 F.2d 272, 274 (9th Cir. 1987). Though the parties agree that California law governs, they dispute which of California's statutes of limitations apply to Plaintiffs' claims. Neogen argues that Plaintiffs' theories are personal injury claims arising out of their exposure to Fura-Zone and NFZ, which makes California Code of Civil Procedure § 335.1 and its two-year clock the applicable statute of limitations. *See* Cal. Code Civ. P. § 335.1; *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017). Plaintiffs agree that a two-year

statute of limitations applies to their claims. However, they believe California Code of Civil Procedure § 340.8 governs because that statute applies "in any civil action for injury or illness based upon exposure to a hazardous material or toxic substance[.]" Cal. Code. Civ. P. § 340.8.

The Court agrees with Plaintiffs that § 340.8 applies because its specific language more directly correlates with the substantive nature of Plaintiffs' claims. *See Nelson v. Indevus Pharm., Inc.*, 142 Cal. App. 4th 1202, 1209 (2006) (holding that Cal. Civ. Proc. Code § 340.8 "under its plain meaning applies to cases which allege personal injury caused by harmful chemicals"); *Bekins v. AstraZeneca Pharms. LP*, 739 F. App'x 884, n.1 (9th Cir. 2018) ("Cal. Civ. Proc. Code § 340.8, not § 335.1, is likely the more applicable statute of limitations for this action[,]" involving claims for negligence and strict product liability in connection with prescription drug that caused kidney failure).

**B.  Delayed Discovery Rule**

Neogen argues that the facts alleged in the FAC are insufficient to support the application of the delayed discovery rule because Plaintiffs fail to plead facts showing (1) the time and manner of discovery and (2) Plaintiffs inability to have made the discovery earlier despite reasonable diligence. (Doc. No. 35-1 at 12 (citing *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345-JLS (BGS), 2018 U.S. Dist. LEXIS 37617, at *21 (S.D. Cal. Mar. 17, 2018).) Neogen argues that Plaintiffs rest on the "conclusory assertion" that they did not discover the risks of NFZ and Fura-Zone until scrolling Facebook in 2024, before which, "a reasonable and diligent investigation [would not] have disclosed they were harmed by NFZ/Fura-Zone." (Doc. No. 35-1 at 14 (quoting Doc. No. 25 ¶ 32).)

In response, Plaintiffs contend that Neogen conflates Plaintiffs' awareness of their various reproductive issues with their awareness of the cause of their injuries. (Doc. No. 44 at 11.) Plaintiffs contend that until June 2024, they were neither aware, nor reasonably should have become aware, of sufficient facts to put a reasonable person on inquiry notice that the injuries were caused or contributed to by the wrongful acts of Neogen. (Doc. No. 44 at 11 (citing Doc. 25 ¶ 31).) Neogen suggests that regulations, reports, and studies about

the toxicity of NFZ provided such notice (Doc. 35-1 at 8), however, Plaintiffs argue this argument is unavailing because Plaintiffs are laypersons who are not familiar with scientific literature. (Doc. No. 44 at 11.) Additionally, Plaintiffs assert that highly technical scientific literature is insufficient to provide notice. (*Id.*) Plaintiffs analogize scientific literature with media reports, which under California Code of Civil Procedure § 340.8(c)(2) "[m]edia reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another." Cal. Civ. Proc. Code § 340.8(c)(2)

"Generally, a personal injury claim accrues and the period of limitations commences when a wrongful act takes place." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 882 n.1 (9th Cir. 1983) (citation omitted). In California, a personal injury action would ordinarily accrue "on the date of injury" and therefore would have to be brought within two years of that date, unless the statute of limitations is tolled. *See Goldrich v. Natural Y Surgical Specialties, Inc.*, 25 Cal. App. 4th 772, 779 (1994) ("The action accrues on the date of injury—unless application of the discovery rule delays the time of accrual.")

Under California's delayed discovery rule, the statute of limitations only begins to run once the plaintiff has a "suspicion of wrongdoing," that is, "that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (California's delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." *Id.* at 1111. However, "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.*; *Nelson*, 142 Cal. App. 4th at 1206 ("[A] plaintiff's duty to investigate does not begin until the plaintiff actually has a reason to investigate."); *Fox*, 35 Cal. 4th at

807 ("[W]e look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."). Moreover, the statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only "once the plaintiff has a suspicion of wrongdoing." *Jolly,* 44 Cal. 3d at 1111.

A plaintiff that invokes the delayed discovery rule "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (internal quotations and citation omitted). Whether the delayed discovery rule applies is a question of fact—a court cannot decide as a matter of law at what point an investigation would have revealed the factual basis for a claim unless the allegations in a complaint can support only one reasonable conclusion. *See E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320, 1325–26 (2007); *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 921 (2009). If a reasonable investigation would not reveal the factual basis for a cause of action, the claim does not accrue. *Fox,* 35 Cal. 4th at 803. Discovery of the factual cause of a plaintiff's injury does not trigger the statute of limitations by itself; an investigation must reveal a tortious cause. *See Jolly*, 44 Cal. 3d at 1109 n.4 (explaining that the plaintiff must be aware of both injury and negligent cause).

As an initial matter, the Court finds unpersuasive Neogen's contention that regulations, reports, and studies concerning the toxicity of NFZ provided the Plaintiffs with inquiry notice. The Court agrees with Plaintiffs that scientific literature is analogous to media reports which is insufficient to put a reasonable person on inquiry notice that their injuries were caused or contributed to by a defendant's wrongful conduct. *See* Cal. Civ. Proc. Code § 340.8(2).

Next, the Court finds that the factual circumstances surrounding Plaintiff Barrett's claims differ materially from those of Plaintiffs Pitzen, Mercer, and Oddie. As alleged in the FAC, Plaintiffs Pitzen, Mercer, and Oddie did not discover that they were allegedly harmed by NFZ or Fura-Zone until June of 2024, when Plaintiff Barrett posted on Facebook asking if any other women who worked at stables with horses developed ovarian

cysts or fibroids after using NFZ ointment. (Doc. No. 25 ¶ 32.) The FAC alleges that these plaintiffs did not discover facts that would cause a reasonable person to suspect the risks associated with exposure to NFZ and/or Fura-Zone until June of 2024, when Plaintiff Barrett posted on Facebook on June 17, 2024. (*Id.*) These allegations are sufficient as to Plaintiffs Pitzen, Mercer, and Oddie regarding the time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence. *Fox*, 35 Cal. 4th at 808. As a result, Plaintiffs Pitzen, Mercer, and Oddie may invoke the delayed discovery rule based on the timing of their awareness. Their claims are not barred by the two-year statute of limitations.

In contrast, the FAC does not allege any facts indicating when Plaintiff Barrett discovered that her medical issues may be related to NFZ and/or Fura-Zone. To be sure, something must have led Plaintiff Barrett to believe that NFZ and/or Fura-Zone caused her reproductive injuries, thereby prompting her to make the Facebook post asking if others experienced the same harm. However, Plaintiff Barrett does not allege any such facts. Thus, the Court cannot determine the time and manner of Plaintiff Barrett's discovery. Accordingly, Plaintiff Barrett does not plead sufficient facts to apply the delayed discovery rule to her claims. Unless the FAC sufficiently pleads fraudulent concealment, Plaintiff Barrett's claims are time-barred.

### C.   Fraudulent Concealment

Neogen argues that Plaintiffs cannot toll the statute of limitation because the FAC does not allege fraudulent concealment with the requisite specificity. (Doc. No. 35-1 at 14–15.) Neogen argues that Plaintiffs fraudulent concealment allegation fails because Plaintiffs do not allege the date or manner of discovery and Plaintiffs fail to specify in sufficiently particular terms how Neogen acted deceptively to conceal information from each Plaintiff. (Doc. No. 35-1 at 15.) Neogen contends that absent a fiduciary relationship, nondisclosure alone is not fraudulent concealment—that is, Plaintiffs must show Neogen actively prevented Plaintiffs from suing in time. (*Id.*)

Plaintiffs counter that the FAC sufficiently alleges fraudulent concealment. Plaintiffs

allege Neogen affirmatively concealed the safety risks associated with Fura-Zone by labeling, distributing, and placing Fura-Zone into the stream of commerce while knowing that it was unsafe for its intended use and intentionally under-reporting the health risks of Fura-Zone. (Doc. 25 ¶¶ 42, 44, 59). Plaintiffs point to Neogen's website which expressly instructs that Fura-Zone "may be used as a sweat[,]" and contains no disclosure or warning that this use is associated with reproductive health damage and cancer risks. (*Id*. at ¶ 16.)

California law regarding fraudulent concealment is framed very generally—"[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007) (en banc); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (en banc) ("It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it."). "The rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale 'is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an "otherwise diligent" plaintiff in discovering his cause of action.'" *Bernson*, 7 Cal. 4th at 931 (quoting *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 99 (1976).

"Under either California or federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir.1980); *see also Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) ("[F]raudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of

fraudulent concealment.'"). In order to establish fraudulent concealment, the complaint must plead: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of the fact sufficient to put him on inquiry." *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM CWX, 2006 WL 4749756, *42 (C.D. Cal. Sept. 25, 2006) (quoting *Baker v. Beech Aircraft Corp.,* 39 Cal. App. 3d 315, 321 (1974)). The plaintiff must specifically plead "the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Conerly,* 623 F.2d at 120 (quoting *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978)). In addition, "the plaintiff must allege facts showing 'affirmative conduct' on the part of the defendant which would lead a reasonable person to believe that there was no claim for relief." *Id.* (citing *Rutledge,* 576 F.2d at 250). "Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure." *Rutledge,* 576 F.2d at 250. "The affirmative act of denying wrongdoing may constitute fraudulent concealment where the circumstances make the plaintiff's reliance upon the denial reasonable." *Id.*

Here, Plaintiffs fail to plead fraudulent concealment with Rule 9(b)'s required specificity. Plaintiffs fail to plead facts related to when they discovered the purported fraud. As discussed above, Plaintiffs Pitzen, Mercer, and Oddie allege when they discovered that their health issues may be related to Fura-Zone and/or NFZ—*i.e.*, when they read Plaintiff Barrett's Facebook post—however, none of the Plaintiffs allege when they discovered the purported fraudulent concealment. Additionally, Plaintiffs do not plead facts related to any affirmative conduct that Neogen engaged in to conceal the allegedly harmful side effects of Fura-Zone and/or NFZ.

Moreover, the allegations throughout the FAC impermissibly "lump" Defendants together. (*See, e.g.*, Doc. No. 25 ¶ 34 ("All applicable statutes of limitations have been tolled by Defendants' knowing and active fraudulent concealment and denial of the dangers of NFZ and Fura-Zone."); *id.* ¶ 35 ("Defendants have consistently and falsely represented

the safety of their NFZ-based products."); *id.* ¶ 37 ("Defendants knowingly, affirmatively, and actively concealed safety information concerning NFZ and Fura-Zone and the serious risks associated with the use of and/or exposure to their products."). Such allegations that "merely lump multiple defendants together" do not satisfy Rule 9(b). *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). A plaintiff must "differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007) (citation omitted). The complaint must "at a minimum identify the role of each defendant in the alleged fraudulent scheme." *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) (citation omitted). Accordingly, the Court will not toll the statute of limitations based on fraudulent concealment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES** in part Neogen's Motion to Dismiss. (Doc. No. 35.) The Court finds Plaintiff Barrett's claims are not tolled by the discovery rule nor fraudulent concealment as plead in the complaint. Accordingly, Plaintiff Barrett's claims appear barred by the statute of limitations and her claims are **DISMISSED WITH LEAVE TO AMEND**. The Court finds Plaintiffs Pitzen, Mercer, and Oddie's claims are sufficiently plead as tolled under the delayed discovery rule. Neogen's Motion to Dismiss as to Plaintiffs Pitzen, Mercer, and Oddie's claims is **DENIED**.

If Plaintiffs choose to file an amended complaint, they must do so by no later than **November 17, 2025**. Neogen must answer or otherwise respond to the operative pleading by no later than **December 8, 2025**.

**IT IS SO ORDERED**.

Dated: October 27, 2025

Hon. Anthony J. Battaglia
United States District Judge