UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA PITZEN, *et al.*,<br><br>                              Plaintiff,<br><br>v.<br><br>ATLANTIC ANIMAL HEALTH, INC.<br>d/b/a SQUIRE LABORATORIES, INC.<br>and NEOGEN CORPORATION,<br><br>                          Defendants. | Case No.:  25-cv-0196-ABJ-DEB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT NEOGEN'S MOTION TO DISMISS (Doc. No. 63)**<br><br>**(2) DENYING DEFENDANT NEOGEN'S MOTION FOR MORE DEFINITE STATEMENT (Doc. No. 64)** |

Before the Court are two pending motions: (1) Defendant Neogen Corporation's ("Neogen") Motion to Dismiss the Fraud-Based Claims in Plaintiffs' Amended Complaint (Doc. No. 63) and (2) Neogen's Motion for More Definite Statement (Doc. No. 64). Plaintiffs responded in opposition to both motions (Doc. Nos. 66; 67) and Neogen replied (Doc. Nos. 69; 70). For the reasons stated below, the motions are **DENIED.**

I.      **BACKGROUND**

    A.      **Procedural History**

Plaintiffs Joanna Pitzen, Joanne Mercer, Caroline Oddie, and Jenny Barrett ("Plaintiffs") initiated the instant action on January 28, 2025, alleging causes of action for

1

negligence and strict products liability. (Doc. No. 1.) On March 24, 2025, Neogen filed a motion to dismiss the complaint. (Doc. No. 15.) Thereafter, the Parties filed a joint motion seeking leave for Plaintiffs to file an amended complaint. (Doc. No. 23.) The Court granted the joint motion, and Plaintiffs filed the First Amended Complaint ("FAC"). (Doc. No. 25.) Neogen and Defendant Atlantic Animal Health, Inc. d/b/a Squire Laboratories, Inc. ("Squire") both moved to dismiss the FAC. (Doc. Nos. 35; 37.) Plaintiffs dismissed Squire pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and the Court denied Squire's Motion to Dismiss as moot. (Doc. Nos. 56; 57.) On October 27, 2025, the Court granted in part and denied in part Neogen's Motion to Dismiss (Doc. No. 61.) In that order, the Court concluded Plaintiffs had not adequately pleaded fraudulent concealment tolling because they failed to allege with sufficient particularity affirmative acts of concealment attributable to Neogen and facts concerning discovery of the alleged concealment. Thus, the Court found that Plaintiffs could not rely on a theory of fraudulent concealment to toll their claims. Notably, the Court did not dismiss any cause of action. Rather, the Court found that "Plaintiff Barrett's claims appear[ed] barred by the statute of limitations and her claims [were] dismissed with leave to amend." (Doc. No. 61 at 15.)[1] Additionally, "[t]he Court [found] Plaintiffs Pitzen, Mercer, and Oddie's claims [] sufficiently plead as tolled under the delayed discovery rule." (*Id.*)

Subsequently, Plaintiffs filed the operative Second Amended Complaint ("SAC"). (Doc. No. 62.) On December 8, 2025, Neogen filed the instant Motion to Dismiss and Motion for More Definite Statement. (Docs. Nos. 63; 64.) Neogen moves to "dismiss" Plaintiffs' purported "fraud-based claims" arguing the allegations fail to satisfy Rule 9(b). (Doc. No. 63.) Additionally, Neogen moves for a more definite statement "because Plaintiffs' pleadings are so vague and ambiguous that Neogen cannot reasonably prepare a response" arguing that "Plaintiffs' refusal to narrow their pleading to include only those

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

allegations against Neogen flies in the face of this Court's October 27, 2025 Order." (Doc. No. 64-1 at 4.)

**B.      Factual History**

Plaintiffs allege that Neogen and Squire developed, manufacture, market, and distribute Fura-Zone, a topical antibacterial ointment containing the active ingredient nitrofurazone ("NFZ"). (Doc No. 62 ¶¶ 7, 11, 12.) NFZ is an odorless, pale-yellow antimicrobial agent in powder form that treats and prevents surface bacterial infections in wounds, burns, and cutaneous ulcers in horses. (*Id.* ¶¶ 11, 13.) Equestrians administer Fura-Zone topically by applying it directly on lesions with a spatula or first on a piece of gauze. (*Id.* ¶¶ 14, 15.) According to the Fura-Zone instructions, the product can also be used as a sweat by lathering Fura-Zone around the affected joint, covering it in plastic wrap, and then applying a bandage. (*Id.* ¶ 16.) When applying a sweat, it is common to mix Fura-Zone, an NFZ-based product, with dimethyl sulfoxide ("DSMO"), a colorless liquid that aids the transportation of toxic compounds across skin, thereby inducing toxicosis from the NFZ. (*Id.* ¶ 17.) Plaintiffs allege that these instructions permit exposure through touch and inhalation. (*Id.* ¶¶ 15, 26.)

According to the SAC, studies dating back to the 1960s show that NFZ produces mammary tumors in rats and ovarian tumors in mice. (*Id.* ¶ 19.) Studies from the National Toxicology Program found "clear evidence" of carcinogenic activity of NFZ for female rats and mice, and "equivocal evidence" of carcinogenic activity of NFZ for male rats. (*Id.* ¶ 21.) Further, scientists have explained that NFZ not only causes cancer but also makes existing cancer progress at a much faster rate because NFZ spurs cell proliferation, promoting progression in carcinogenesis. (*Id.* ¶ 24.)

Plaintiffs contend that scientific knowledge of NFZ's toxicity has led to increasing regulations of its use. (*Id.* ¶¶ 27–30.) In 1991, the Federal Drug Administration ("FDA") banned NFZ for use in poultry and swine consumed by humans because of cancer risks. (*Id.* ¶ 28.) In 2002, the FDA banned the topical use of nitrofurans on food-producing animals because studies proved that cattle treated with NFZ had carcinogenic residue in

25-cv-0196-ABJ-DEB

their milk and tissues.[2] (*Id.* ¶ 29.) Additionally, California's Proposition 65 includes NFZ in its lists of carcinogens and/or reproductive toxicants as a reproductive toxicant. (*Id.* ¶ 30.)

Plaintiffs allege that they understood Fura-Zone was intended to be used on horses. (*Id.* ¶ 31.) However, Plaintiffs contend they were not aware they were risking reproductive harm by applying Fura-Zone in a manner proscribed by the product itself. (*Id.*) Plaintiffs all allege they routinely used Fura-Zone as an antibiotic ointment, applying it to horses within their care, including but not limited to, the exposure described below. (*Id.* ¶ 18.)

A. Plaintiff Pitzen was first exposed as a teenager while working as a horse groomer. There, she would mix Fura-Zone with DSMO to create a sweat which she would lather on the horses' joints. She continued her work at multiple locations through San Diego County and over time experienced significant exposure to Fura-Zone. (*Id.*)

B. Plaintiff Mercer was first exposed to Fura-Zone at age 11 and spent the next 20 years applying Fura-Zone that was premixed with DSMO to create a sweat. (*Id.*)

C. Plaintiff Oddie was exposed to Fura-Zone every weekend for approximately three years between 1975 to 1978. During that time, she would mix Fura-Zone with DSMO to create a sweat which she lathered around horses' joints. (*Id.*)

D. Plaintiff Barrett was frequently and continuously exposed to Fura-Zone since she was a young child. From that time until 2000, Barrett routinely used Fura-Zone, applying the ointment with her fingers and hands. (*Id.*)

Plaintiffs contend they did not discover facts that would cause a reasonable person to suspect the risks associated with exposure to NFZ or Fura-Zone until June of 2024. (*Id.* ¶ 32.) On June 17, 2024, Plaintiff Barrett posted on Facebook asking if any other women who worked with horses developed ovarian cysts or fibroids after using NFZ ointment.

---

[2] NFZ is a part of the chemical class referred to as nitrofurans. *See* Nitrofurans; Withdrawal of approval of New Animal Drug Applications. 56 Fed. Reg. 41,902, 41,903 (1991)

25-cv-0196-ABJ-DEB

(*Id.*) Plaintiff Barrett decided to make the Facebook post after speaking with her cousin, Kathleen Patrick, earlier that day regarding their shared infertility issues and exposure to Fura-Zone.[3] (*Id.* ¶ 33.) Following that conversation, Barrett became interested in finding out whether other women who worked in the equestrian industry, and were exposed to Fura-Zone, experienced similar reproductive problems. (*Id.*) After reading the comments on the post from women who reported having similar reproductive issues following their own exposure to Fura-Zone, Barrett came to believe that Fura-Zone was most likely the cause of her reproductive issues. (*Id.*)

## II. REQUESTS FOR JUDICIAL NOTICE

### A. Legal Standard

Judicial notice under Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice at any stage of a proceeding. Fed. R. Evid. 201(d). However, judicial notice is uncommon during the pleading phase, as "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint" under Federal Rule of Civil Procedure 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 288 (9th Cir. 2001)). Considering information outside the pleading typically converts the Rule 12(b)(6) motion to dismiss for failure to state a claim into a Rule 56 motion for summary judgment, but judicial notice can serve as an exception. *Id.* at 998; *United States v. Ritchie*, 903, 908 (9th Cir. 2003).

---

[3] Kathleen Patrick is also represented by Plaintiffs' counsel in an action in the Middle District of Florida. *See Kathleen Patrick v. Neogen Corp., et al.*, No. 6:24-cv-02067-JA-RMN (M.D. Fla. Nov. 12, 2024.)).

**B.  Discussion**

Both parties request that the Court that judicial notice Neogen's Answer to the Complaint and Affirmative and Other Defenses filed in *Kathleen Patrick v. Neogen Corp., et al.*, No. 6:24-cv-02067-JARMN, Doc. 32 (M.D. Fla. Jan. 13, 2025). (*See* Doc. Nos. 68; 70 at 3 n.2.) Generally, courts may take "judicial notice of court filings," as such records "are readily verifiable." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir.1998)). Because the Answer is a court document subject to judicial notice under Federal Rule of Evidence 201, the Court **GRANTS** the requests for judicial notice. *See id.*; *see also In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1163 (S.D. Cal. 2024) (taking judicial notice of court documents).

**III.  MOTION TO DISMISS**

**A.  Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a defendant may move to dismiss for *failure to state a claim* upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) (emphasis added). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a *claim* on the basis of a dispositive issue of law.") (emphasis added). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

6

However, the court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

A cause of action alleging fraud must also comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.* However, the complaint must include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds.*

The Ninth Circuit has explained that where fraud is not an essential element of a claim, but a plaintiff alleges a "unified course of fraudulent conduct" and relies entirely on that conduct, the claim may "sound in fraud" such that Rule 9(b) applies. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). However, where both fraudulent and non-fraudulent conduct is alleged, "only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Id.* at 1105.

*Vess* further instructs that:

> Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.

*Vess*, 317 F.3d at 1105 (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). Thus, "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from

7

the claim." (*Id.*) "The court should then examine the allegations that remain to determine whether they state a claim." (*Id.*)

**B.    Discussion**

Neogen moves to "dismiss any and all allegations related to fraud and fraudulent concealment from Plaintiffs' Amended Complaint." (Doc. No. 63-1 at 9.) Neogen argues that Plaintiffs fail to plead the "fraud-based claims" with the specificity required under Rule 9(b). (*Id.* at 8.) Relying on the Court's previous order, Neogen argues that the fraud allegations must be dismissed because the SAC fails to remedy the deficiencies previously identified by the Court. (*Id.*) Plaintiffs oppose the Motion arguing their claims "do not sound in fraud as they do not rely entirely on a unified course of fraudulent conduct." (Doc. No. 67 at 9.)

Neogen's motion to dismiss misconstrues both Plaintiffs' pleadings and the Court's prior order. First, Plaintiffs do not assert causes of action for fraud or fraudulent concealment. Rather, Plaintiffs' assert claims for negligence and strict products liability under a failure to warn theory. (*See* Doc. No. 62.) Fraudulent concealment arises only in connection with Plaintiffs' argument that the statute of limitations should be tolled. Second, the Court's prior order did not "dismiss" any standalone fraudulent concealment claim because no such claim existed in the FAC. Rather, the Court concluded that Plaintiffs did not plead fraudulent concealment with sufficient particularity under Rule 9(b) to invoke equitable tolling at that stage of the proceedings. (Doc. No. 61 at 12–15.) The prior order did not strike allegations from the complaint, dismiss substantive claims, or hold that Plaintiffs' negligence and strict liability claims sounded in fraud. (*Id.*) The Court merely found that, as alleged, Plaintiffs could not rely on a theory of fraudulent concealment to toll their claims. (*Id.*)

Neogen now asks the Court to "dismiss" allegations relating to concealment. (Doc. No. 63-1 at 9.) But Rule 12(b)(6) authorizes dismissal of claims, not isolated allegations. Neogen cites no authority authorizing dismissal of isolated allegations embedded within otherwise adequately pleaded non-fraud causes of action. To the extent Neogen contends

8

certain allegations fail to satisfy Rule 9(b), *Vess* makes clear that the proper course is simply to disregard inadequately pleaded allegations of fraud, not to dismiss otherwise viable claims through Rule 12(b)(6). *Vess*, 317 F.3d at 1104–05.

Moreover, the Ninth Circuit's decision in *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995), cautions against resolving tolling issues at the pleading stage unless the complaint conclusively forecloses tolling as a matter of law. *Supermail Cargo* explained that "because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Id.* at 1106 (quoting *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir.1993)).

Here, Plaintiffs' allegations concerning concealment pertain to the doctrine of equitable tolling—not independent fraud claims. Whether Plaintiffs can ultimately establish fraudulent concealment tolling is a separate and distinct issue from whether certain allegations should remain in the complaint. The Court's prior ruling already addressed the sufficiency of Plaintiffs' tolling allegations under Rule 9(b). Though the Court found those allegations insufficient to toll Plaintiffs' claims, Neogen has provided no legal basis for why the Court must "dismiss" these allegations from the SAC.

Finally, the inclusion of concealment-related allegations does not transform Plaintiffs' claims into claims "sounding in fraud." Plaintiffs' negligence and strict liability claims rest principally on allegations that Neogen and Squire failed to provide adequate warnings concerning the dangers associated with NFZ exposure. Plaintiffs can pursue those claims without proving fraudulent concealment or intentional misrepresentation.

Accordingly, Neogen's request to dismiss Plaintiffs' purported "fraud-based claims" is misplaced because no such standalone claims are presently asserted. Neogen's Motion to Dismiss is **DENIED**.

## II.     MOTION FOR A MORE DEFINITE STATEMENT

As an alternative to dismissal, Neogen moves for a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. No. 64-1.)

25-cv-0196-ABJ-DEB

### A.    Legal Standard

Rule 12(e) provides for a more definite statement only where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are 'proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.'" *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015) (quoting *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). A plaintiff need only "set forth enough details so as to provide the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.*" Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990). Rule 12(e) motions are viewed with disfavor and are rarely granted. *Id*.

Even when properly asserted, "[a] motion for a more definite statement attacks intelligibility, not simply lack of detail." *Gregory Village Partners v. Chevron, USA*., 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011). Thus, the motion will be granted "only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." *Craigslist, Inc. v. Autoposterpro, Inc.*, 2009 WL 890896, at *4 (N.D. Cal. Mar. 31, 2009). Conversely, where a "complaint is specific enough to appraise the responding party of the substance of the claim being asserted or where the detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied." *U.S. E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012) (citation omitted).

### B.    Discussion

Neogen argues that the SAC is "so vague and ambiguous that Neogen cannot reasonably prepare a response." (Doc. No. 64-1 at 4.) Arguing that the SAC constitutes an impermissible "shotgun pleading," Neogen contends that Plaintiffs continue to impermissibly lump Neogen and Squire together under the collective term "Defendants." (*Id.*) Neogen characterizes Plaintiffs' failure to narrow their pleading as a deliberate

strategy to avoid committing to specific claims against the only remaining defendant. (*Id.* at 9.) Neogen points out that the Court's previous order found Plaintiffs impermissibly lumped Neogen and Squire together in their factual and legal allegations. (*Id.* at 4; 7.) Neogen concedes, however, the Court's discussion specifically concerned the fraudulent concealment allegations asserted for tolling purposes. (*Id.*)

Plaintiffs oppose the motion for more definite statement arguing that allegations may be grouped against multiple defendants when the defendants engaged in much of the same conduct. (Doc. No. 66 at 7.) Plaintiffs state the SAC "unambiguously alleges[] Plaintiffs seek to hold both Squire and Neogen responsible for the development, manufacture, testing, marketing, and sale of Fura-Zone." (*Id.* at 8.)

The Ninth Circuit has recognized four main types of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026).

In *Gibson*, the court went on to say: "'Shotgun pleading' describes a class of defects in complaints; it does not supply a brightline rule." *Gibson*, 165 F.4th at 1289–90. "Rule 8 provides district courts with an additional *tool* that they *may* use to dismiss shotgun pleadings when identified—not a *rule* necessarily *requiring* district courts to do so . . . ." *Id.* at 1290 (emphasis in original).

"Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 9763371 (N.D. Cal. Feb. 8, 2021), *opinion vacated in part on other grounds on reconsideration*, No. 19-CV-05784-JST, 2021

11

WL 11714935 (N.D. Cal. Dec. 7, 2021). "There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-03053 MWF (VBKx), 2015 WL 12777092, at *4 (C.D. Cal. Oct. 23, 2015). Additionally, courts in this circuit have permitted group pleading in cases involving corporate entities when there is a direct and overlapping connection between the companies. *See, e.g.*, *Doe v. Github, Inc.*, 672 F. Supp. 3d 837, 855 (N.D. Cal. 2023); *Wizards of OBS, LLC v. Bytedance Ltd.*, No. 5:25-CV-00636-SSS-DTBX, 2026 WL 1097548 (C.D. Cal. Mar. 4, 2026).

Here, the SAC provides Neogen with fair notice of Plaintiffs' claims and the grounds upon which those claims rest. Plaintiffs sufficiently allege claims for negligence and strict products liability, thus providing Neogen with sufficient notice to reasonably prepare a response. The SAC makes clear that Plaintiffs seek to hold both Squire and Neogen responsible for the development, manufacture, testing, marketing, and sale of Fura-Zone. (Doc. No. 66 at 8.) Though the grouped allegations may not pass muster under the heightened pleading standards of Rule 9(b), the allegations are sufficient under the liberal notice pleading standards of Rule 8.

The fact that Plaintiffs previously dismissed Squire does not necessitate removing any and all references or allegations related to Squire. *Butchers' Union, Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 631 F. Supp. 1001, 1012 n.6 (E.D. Cal. 1986) (noting that allegations referencing dismissed defendants "remain for factual background" even though the defendants were "no longer parties to [the] action"). "[A]llegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant . . . [and] [w]here allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830

(N.D. Cal. 1992). "Under the liberal federal pleading rules[,] notice and clarity of claims is all that is required." *Id.* (citing *Colaprico*, 758 F. Supp. at 1337).

Finally, Neogen's two motions to dismiss contradict any suggestion that the SAC is too vague to permit a proper response. (*See* Doc. No. 64-1.) The fact that Neogen has filed two cogent motions to dismiss belies the notion that the SAC is too vague for Neogen to frame a proper response. *See Robbins v. Coca-Cola-Co.*, No. 13–CV–132–IEG NLS, 2013 WL 2252646, at *4 (S.D. Cal. May 22, 2013) ("Defendant's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response"); *Admiral Ins. Co. v. Urb. Hous. Partners, Inc.*, No. 16-CV-2720-AJB-RBB, 2016 WL 7451661, at *2 (S.D. Cal. Dec. 28, 2016). As such, the Court declines to find the SAC a shotgun pleading and **DENIES** Neogen's Motion for More Definite Statement.

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Neogen's Motion to Dismiss the Second Amended Complaint. (Doc. No. 63.) The Court finds that Plaintiffs have adequately pleaded their claims for negligence and strict products liability under Rule 8(a) and finds no basis to dismiss the fraudulent concealment allegations. The Court also **DENIES** Neogen's Motion for More Definite Statement. (Doc. No. 64.) The Court finds the SAC gives Neogen adequate notice of Plaintiffs' claims and the basis on which those claims are founded. Neogen must file an answer to the SAC by no later than **May 26, 2026**.

**IT IS SO ORDERED.**

Dated:  May 11, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-cv-0196-ABJ-DEB